IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JERRI MABE M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 22-4026-JWL |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223, Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's mental impairments, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING for further proceedings consistent with this decision.

**I.  Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSDI benefits on July 30, 2018.  (R. 18, 209).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating her mental impairments.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

2

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief, beginning first with the legal authority of the ALJ and Administrative Appeals Judges (AAJs) in this case.

## II.     Legal Authority of the ALJ and the AAJs in this Case

Plaintiff argues the ALJ and the AAJs in this case were not properly appointed by Acting Commissioner of Social Security Nancy Berryhill because Ms. Berryhill served as Acting Commissioner longer than the initial 210 days authorized by the Federal Vacancies Reform Act (FVRA) and President Trump's subsequent nomination of Mr. Saul to be the Commissioner of Social Security was insufficient to reinstate Ms. Berryhill as Acting Commissioner.  Plaintiff argues that when Ms. Berryhill appointed the ALJ and AAJ's after the 210 days authorized by the FVRA she was no longer qualified pursuant to the Appointments Clause of the Constitution to appoint them despite that the

4

appointments occurred after Mr. Saul's nomination but before he was confirmed by the Senate. (Pl. Br. 11-12) (citing Brian T. D. v. Kijakazi, 2022 WL 179540 (D. Minn. Jan. 20, 2022), reversed sub nom Dahle v. Kijakazi, 62 F.4th 424 (8th Cir. 2023); and Richard J.M. v. Kijakazi, 2022 WL 959914 (D. Minn. Mar. 30, 2022)).

The Commissioner argues Plaintiff misinterprets the FVRA which provides that an acting official serving pursuant to the FVRA may serve "for no longer than 210 days … or … once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." (Comm'r Br. 11-12) (quoting 5 U.S.C. § 3346(a)(1 & 2). She argues the District of Minnesota cases cited by Plaintiff are outliers and the vast majority of cases to consider the issue have held that the statute permits an acting official to serve 210 days and also to serve from the time the president makes a nomination for the period the nomination is pending. Id. at 13 & n.5 (citing numerous district court cases from W.D.N.C, E.D. Va., N.D. Iowa, D.D.C., D.N.J., M.D. Pa., D. Del., M.D.N.C., D. Neb., D. Nev., W.D. Wash., W.D. Va., S.D. Ind., and W.D. Pa.).

When this case was briefed there were apparently no Courts of Appeal to have decided the issue presented here. In the interim, the case has been definitively decided by the courts of appeal. As suggested in the court's citation above, Brian T. D. was appealed and on March 7, 2023 the Eighth Circuit reversed, holding, as the Commissioner argues here, that

> Subsections 1 and 2 [of 5 U.S.C. § 3346(a)] operate independently, providing distinct limitations on when an individual who is qualified to serve under § 3345 may begin or end their service. Subsection 1 allows an

> individual to serve for 210 days after a vacancy occurs.  Subsection 2 allows an individual to serve from the time a nomination is sent to the Senate until that nomination is no longer pending.  Subsection 2 contains no time limit expressed in a number of days and speaks in no manner as to other requirements for a person to serve as an acting officer.  Rather, it provides a time limit through reference to Senate action.  There is simply no textual basis to imply that subsection 1 and its 210-day limit somehow restrict a person's service under subsection 2.

Dahle v. Kijakazi, 62 F.4th 427-28.  The Fourth Circuit has also reviewed three cases in which the Western District of North Carolina considered the issue and found that Ms. Berryhill had acted within FVRA when she appointed ALJs and AAJs.  On April 11, 2023, the Fourth Circuit affirmed the district court, holding "§ 3346(a)(1) and § 3346(a)(2) are, by their plain text, disjunctive and independent," that Ms. Berryhill was legally serving as Acting Commissioner, and her appointment of the ALJ's was valid. Rush, et al v. Kijakazi, 65 F.4th 114, 117 (4th Cir. 2023).  This court agrees with the rationale of both courts of appeal, finds the Tenth Circuit would agree, and need not further address the issue.

**III.    The ALJ's Consideration of Mental Functional Limitations**

Plaintiff points out the ALJ found she has mild limitations in the three broad mental functional areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (Pl. Br. 4) (citing R. 23-24).  She argues that an ALJ must include mental functional limitations found at step two in her RFC assessment or explain her basis for not doing so.  Id. at 3 (citing Wells v. Colvin, 727 F.3d 1061, 1068-71 (10th Cir. 2013)).  She argues that despite the ALJ's findings and the holding of Wells the ALJ included no mental functional limitations in the RFC

6

assessed and did not explain why she did so in her decision. (Pl. Br. 5-6). Moreover, she argues that here the ALJ found Plaintiff capable of past relevant semiskilled and skilled work and did not explain how her mild mental limitations would accommodate such work. Id. at 7-8. Plaintiff notes that in Wells the ALJ provided explanations for not including mental limitations in the RFC assessed which the court suggested might be sufficient except the reasons were not supported by the record evidence whereas in this case the ALJ provided no reason for not including any mental limitations in the RFC assessed. Id. 10.

The Commissioner responds that substantial evidence supports the ALJ's mental RFC assessment and argues, "the ALJ appropriately assessed all of the evidence, including treatment history, objective medical evidence, expert state agency psychologists' assessments, Plaintiff's activities and reported symptoms." (Comm'r Br. 4). She argues:

> the ALJ also explained that the objective medical evidence did not show any positive findings regarding her mental health, there were no mental status examinations, and no complaints by Plaintiff to her treatment providers about mental health symptoms (AR 23-24). The ALJ noted that Plaintiff was working part-time, about 25 to 29 hours a week, and Plaintiff testified that her job required her to deal with the public at the front desk of a doctor's office (AR 21, see AR 45-46). While the ALJ acknowledged Plaintiff's work schedule was not consistent, the ALJ explained that it nevertheless "provides evidence of [Plaintiff's] ability to perform work activities" (AR 21, 27).

Id. 5. Plaintiff notes the ALJ discussed the findings of the state agency psychological consultants who did not opine any mental functional limitations and on that basis "reasonably determined that Plaintiff's mild anxiety did not require any functional

7

workplace limitations." (Comm'r Br. 6). The Commissioner continues to argue various reasons why the ALJ's assessing no mental RFC limitations should be justified. Id. at 7-9 (no presumption the paragraph B criteria require mental RFC limitations, ALJ explained her RFC assessment reflects the limitations she found in her paragraph B evaluation, and the ALJ considered all the evidence and viewed as a whole her explanation was adequate).

### A.     The ALJ's Relevant Findings

The ALJ found Plaintiff has a medically determinable mental impairment of anxiety which is nonsevere because it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. 23). In making that finding the ALJ applied the Commissioner's psychiatric review technique (PRT) and considered the four broad mental functional areas. Id. She found Plaintiff has no limitation in the first functional area, understanding, remembering, or applying information, noting, "There is insufficient evidence to establish that the claimant's ability to learn, recall, or use information to perform work activities independently, appropriately, effectively, and on a sustained basis is seriously limited." Id.

She found Plaintiff has mild limitations in the remaining three mental functional areas, interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Id. 23-24. The ALJ's discussion of each major area was similar and the court quotes her discussion regarding the fourth area:

> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The treatment notes indicated that the claimant had anxiety, but there were few complaints of symptoms by the

> claimant (See e.g., 25F).  There were no positive findings in the treatment notes, no mental status examinations, and <u>no complaints</u> by the claimant to her physician of pertinent symptoms.  She was treated routinely and conservatively with medication, and there was no indication that she required additional types of treatment other than medication.  Despite her impairments, she is able to prepare meals, take care of her personal needs and grooming, do household chores, walk to places, drive, use public transportation, go shopping, manage money and handle her finances, go to the beach, travel, go to church, watch movies, socialize with others, and attend social events (4E/1-5; 26E/1).  There is insufficient evidence to establish that the claimant's ability [to] regulate emotions, control behavior, or maintain well-being in a work setting independently, appropriately, effectively, and on a sustained basis is seriously limited.  Based on this evidence and the other evidence detailed below, the claimant's ability to adapt and manage oneself supports the finding of <u>no limitation</u>.

(R. 24) (underlines added by the court).

The ALJ also explained her evaluation of the opinion of the state agency psychological consultants:[2]

> As for the medical opinion evidence, the undersigned has considered the opinion of the State [sic] agency psychological consultants, who opined that the claimant has no more than mild mental limitations (1A; 3A).  The opinion is supported by, and consistent with, the objective medical evidence.  The claimant alleged difficulty concentrating, as well as anxiety (See e.g., 4E).  However, there were no positive findings in the treatment notes, no mental status examinations, and no complaints by the claimant to her physician of pertinent symptoms.  Despite her impairments, she is able to prepare meals, take care of her personal needs and grooming, do household chores, walk to places, drive, use public transportation, go shopping, manage money and handle her finances, go to the beach, travel, go to church, watch movies, socialize with others, and attend social events

---

[2] The medical opinion to which the ALJ refers is more properly called a prior administrative medical finding.  "Prior administrative medical finding" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a "medical opinion," <u>id.</u> at § 404.1513(a)(2), the terms are often used interchangeably, such findings are evaluated by the same standards as medical opinions, <u>id.</u> at § 404.1520c, and the court will use the term medical opinion in this case except when necessary to draw a distinction.

9

> (4E/1-5; 26E/1).  These findings indicate that she has no more than mild limitations, as opined.  Accordingly, the undersigned finds this opinion is persuasive.

(R. 25).  As pointed out by the Commissioner, the ALJ also noted that the paragraph B criteria do not equate to an RFC and that her RFC "assessment reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis."  Id.

The ALJ discussed her evaluation of Plaintiff's work after the amended alleged onset date and her evaluation of Plaintiff's allegations of disabling symptoms:

> The claimant also reported that she has been working, which provides evidence of her ability to perform work activities.  The claimant testified that she has been working part-time, for up to 29 hours a week, as a secretary.  Although she testified that she missed work due to her symptoms, and her work activity did not constitute substantial gainful activity, it provides evidence that she still has some of the same abilities required for obtaining and maintaining employment, including other types of work.
>
> The undersigned finds that for some of her impairments, the degree of the claimant's subjective complaints is not comparable to the frequency or extent of treatment sought by the claimant.  The claimant's treatment regimen was routine and conservative.  The claimant's lupus was treated routinely and conservatively with medication, and the treatment notes indicated that she responded well to medication (21F/1).  Otherwise, there was no indication that she required other types or more aggressive treatment.  The lack of more aggressive treatment for her impairment suggests the claimant's symptoms and limitations are not as severe as she alleges.  Accordingly, the claimant's statement regarding the alleged intensity, persistence, and limiting effects of her symptoms are inconsistent with her treatment regimen.

(R. 27-28).  As Plaintiff suggests, the ALJ assessed her with the RFC to perform a range of light work and included no mental functional limitations in that RFC.  Id. at 25.

The ALJ found at step four of the sequential evaluation process that Plaintiff has the capability to perform her semiskilled, Specific Vocational Preparation (SVP) level 4

10

past relevant work (PRW) as a billing clerk, her skilled, SVP level 6 PRW as a legal secretary; and her skilled, SVP level 7 PRW as an office manager. (R. 29). Consequently, she found Plaintiff not disabled within the meaning of the Act from the amended alleged onset date through the date of her decision. (R. 30).

### B.   Analysis

The question presented here is a close question and, at least potentially, could be decided either way. However, in the interest of justice the court finds the better course is to remand for further proceedings. Plaintiff argues the ALJ erred in finding her mildly limited in three broad mental functional areas but failing to include mental functional limitations in the RFC assessed. She does not argue, as the Commissioner points out, that the record evidence demonstrates specific limitations in mental functioning that should have been assessed and that would prevent her from performing her past relevant work. The Commissioner argues that the record evidence supports the RFC assessed by the ALJ. She does not argue, however, that Plaintiff's PRW can be performed by an individual with the mild mental functional limitations presented in the ALJ's decision and she does not argue that a person of Plaintiff's age, education, and work experience with the RFC assessed would be able to perform unskilled, light exertional work.

Moreover, although it is Plaintiff's burden at step four to demonstrate that she cannot perform her past relevant work, the court finds unexplained ambiguities in the ALJ's decision which suggest a cautious approach and remand for clarification. First, it is not clear what limitations the ALJ found in her evaluation of the broad mental functional area of adapting or managing oneself. She recognized "[t]he treatment notes

indicated that the claimant had anxiety, but there were <u>few complaints</u> of symptoms by the claimant." (R. 24).  In the very next sentence she stated, "There were no positive findings in the treatment notes, no mental status examinations, and <u>no complaints</u> by the claimant to her physician of pertinent symptoms." <u>Id.</u>  The only way these contradictory findings may be reconciled is to assume that the few complaints of symptoms by Plaintiff were not pertinent symptoms, but such a conclusion begs explanation which was not forthcoming in the decision.  The court may not merely assume the ALJ's meaning, particularly without identification of the symptoms alleged which were not pertinent.  Anxiety would appear to be a symptom which is pertinent to adapting and managing oneself.  Further, the ALJ stated she found mild limitation in the area of adapting and managing oneself, but at the end of that discussion she stated, "the claimant's ability to adapt and manage oneself supports the finding of <u>no limitation</u>."  These ambiguities beg clarification.

      The ALJ stated she found the state agency psychological consultants' opinion persuasive, yet in both the initial determination and the reconsideration determination, the consultant found no limitation in the broad mental functional area of adapting or managing oneself, contrary to the ALJ's stated finding of a mild limitation.  (R. 71. 86).  Finally, both the initial determination and the reconsideration determination applied Medical-Vocational Guideline rule 202.13 as a framework and found Plaintiff could perform unskilled work but did not find she could perform past relevant work.  (R. 75, 91).  The court cites this evidence not to suggest that the ALJ should have followed the consultants' opinion or that she did follow the consultants' opinion.  Rather, it is cited to

demonstrate ambiguities in the decision which were not addressed and resolved.  Because the court is unable to ascertain the decision of the ALJ and whether it is supported by the record evidence remand is necessary for the Commissioner to clarify the decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent with this decision.

Dated May 18, 2023, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**